IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


CASH DEPOT, LTD.,           )
            )
          Plaintiff,     )
            )
      vs.        )
            )
COMMERCIAL ATM SERVICES, LLC   )
d/b/a ALASKA ATM SERVICE, et al.,   )
            )   No. 3:15-cv-0065-HRH
        Defendants.   )
_____)

<u>O R D E R</u>

<u>Motions to Dismiss</u>

Defendants move to dismiss plaintiff's claims.[1]  These motions are opposed.[2]  Oral

argument was not requested and is not deemed necessary.

<u>Background</u>

Plaintiff is Cash Depot, Inc.  Defendants are Commercial ATM Services, LLC, d/b/a

as Alaska ATM Service; Societe Financial, LLC d/b/a Alaska ATM Service; Societe Financial

---

[1]Docket Nos. 22, 23, & 24.  Defendants move to dismiss all of plaintiff's claims except
for plaintiff's breach of contract claim against Commercial ATM.

[2]Docket No. 26.

-1-

Group, LLC d/b/a/ Alaska ATM Service; James Dainis; and Dominic and Reynold Krueger.

Societe Financial Group is alleged to be the sole member of Commercial ATM; and Dainis is alleged to the sole member of both Societe Financial and Societe Financial Group.[3] Commercial ATM is alleged to "hold[] a business name registration for Alaska ATM Service."[4] Societe Financial is alleged to "own[] a business license in the name of Alaska ATM Service."[5] All three corporate entities are alleged to have "a principal place of business at 510 West Tudor Road #8, Anchorage, Alaska 99503."[6]

Dainis is alleged to be the registered agent for Commercial ATM and Societe Financial and "Alaska ATM's principal."[7] The Kruegers are alleged to be employees or former employees of Alaska ATM.[8]

On June 9, 2014, plaintiff "entered into an Automated Teller Machine (ATM) Service Agreement ... with Alaska ATM."[9] Pursuant to the ATM Agreement, plaintiff "agreed to

---

[3] Amended Complaint at 2-3, ¶¶ 2-4, Docket No. 18.

[4] Id. at 2, ¶ 2.

[5] Id. at ¶ 3.

[6] Id. at 2-3, ¶¶ 2-4.

[7] Id. at 2-3, ¶¶ 2-5.

[8] Id. at 3, ¶¶ 6-7.

[9] Id. at 4, ¶ 11.

pay Alaska ATM to fill [plaintiff's] ATM at the Walmart store located at 2911 Mill Bay Road

in Kodiak, Alaska, with vault cash."[10]

> To fill [plaintiff's] ATM, a courier for Alaska ATM would pick up cash from the Wells Fargo bank in Anchorage, load the cash into a cassette, travel to Kodiak, remove the old cassette (which would typically contain residual vault cash) from [plaintiff's] ATM, install the new cassette into [plaintiff's] ATM, and return the residual cash from the old [cassette] to the bank in Anchorage.[11]

Paragraph 2 of the ATM Agreement provides that

> Cash Depot agrees that until dispensed from the ATMs to customers of the ATMS, ATM Vault Cash shall be the sole exclusive property of Cash Depot and that neither Alaska ATM Service nor any third party shall have any interest (including any legal, equitable or security interest) in such ATM Vault Cash. Legal title to ATM Vault Cash shall never pass to Alaska ATM Service.[12]

Paragraph 3 of the ATM Agreement provides:

> From and after delivery of ATM Vault Cash to ATMs owned by Cash Depot, until Vault Cash is dispensed from the ATMs to customers of the ATMs, Alaska ATM Service hereby accepts all responsibility and bears all risks of loss for the transfer and handling of Vault Cash, including without limitation, any loss

---

[10]Id. at ¶ 12.

[11]Id. at ¶ 13.

[12]Automated Teller Machine (ATM) Service Agreement at 1, ¶ 2, Exhibit A, Amended Complaint, Docket No. 18.

suffered or created by theft, damage, destruction, fraud, or
mysterious loss of cash.[13]

Plaintiff alleges that Dainis and the Kruegers "were the individual couriers who had

responsibility for filling [plaintiff's] ATM on behalf of Alaska ATM."[14] Plaintiff alleges that

these three individuals "transmitt[ed] their personal information and signatures on bank

paperwork to Cash Depot so that Cash Depot would authorize them to access Cash Depot's

Wells Fargo account and withdraw vault cash."[15]

Plaintiff alleges that between June 25, 2014 and December 4, 2014, "$138,940.00 in

vault cash disappeared from [plaintiff's] ATM."[16] Plaintiff alleges that "[t]he disappearance

occurred because one or more of Alaska ATM's couriers failed to return [plaintiff's]

residual vault cash to the bank."[17]

On April 27, 2015, plaintiff commenced this action. Plaintiff's amended complaint

contains the following eight counts: 1) breach of contract against Alaska ATM and Dainis,

2) conversion against all defendants, 3) fraudulent misrepresentation against all

defendants, 4) conspiracy to commit fraud and conversion against all defendants, 5) unjust

---

[13]Id. at ¶ 3.

[14]Amended Complaint at 5, ¶ 16, Docket No. 18.

[15]Id. at 8, ¶ 30.

[16]Id. at 5, ¶ 17.

[17]Id. at ¶ 18.

enrichment against all defendants, 6) unfair trade practices against all defendants, 7) joint and several liability under the UTPA against Alaska ATM and Dainis, and 8) punitive damages against all defendants.

Pursuant to Rules 8(a), 9(b), and 12(b)(6), Federal Rules of Civil Procedure, defendants now move to dismiss all claims against them, except for the breach of contract claim against Commercial ATM.

<u>Discussion</u>

"Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a party's pleading to contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Fed. R. Civ. P. 8(a)(2)). "To survive a Rule 12(b)(6) motion to dismiss, a 'plaintiff must allege enough facts to state a claim to relief that is plausible on its face.'" <u>Turner v. City and County of San Francisco</u>, 788 F.3d 1206, 1210 (9th Cir. 2015) (quoting <u>Lazy Y Ranch Ltd. v. Behrens</u>, 546 F.3d 580, 588 (9th Cir. 2008)). "In assessing whether a party has stated a claim upon which relief can be granted, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party; but 'conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal.'" <u>Id.</u> (quoting <u>Cousins v. Lockyer</u>, 568 F.3d 1063, 1067 (9th Cir. 2009)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged.'" <u>Id.</u> (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)). "'[I]n alleging fraud or mistake,' Rule 9(b) requires a party to 'state with particularity the circumstances constituting fraud or mistake,' including 'the who, what, when, where, and how of the misconduct charged.'" <u>Ebeid ex rel. United States v. Lungwitz</u>, 616 F.3d 993, 998 (9th Cir. 2010) (quoting <u>Vess v. Ciba–Geigy Corp. USA</u>, 317 F.3d 1097, 1106 (9th Cir. 2003)).

In Count I of its amended complaint, plaintiff asserts a breach of contract claim against Alaska ATM and Dainis. The ATM Agreement was between Alaska ATM Service and Cash Depot. Plaintiff has alleged that all three corporate defendants were doing business as Alaska ATM. Commercial ATM does not dispute that it does business as Alaska ATM and Commercial ATM does not move to dismiss plaintiff's breach of contract claim against it. However, Societe Financial and Societe Financial Group argue that this claim against them must be dismissed because they are not parties to the contract. They argue that Alaska ATM is a registered business name owned by Commercial ATM. A business name properly registered under Title 10, chapter 35 of the Alaska statutes "gives the person who has registered the name the exclusive right to the use of the name." AS 10.35.040(b). Thus, the Societe defendants argue that only Commercial ATM can use the name Alaska ATM, which means that plaintiff's contract was only with Commercial ATM.

Plaintiff has alleged sufficient facts to make it plausible that Societe Financial is doing business as Alaska ATM and thus could be a party to the ATM Agreement. Plaintiff has alleged that Societe Financial holds the business license for Alaska ATM which at least suggests that Societe Financial is doing business and holds itself out to the public as Alaska ATM. There are, however, no such facts alleged as to Societe Financial Group. All that is alleged is that Societe Financial Group is owned by Dainis and that it has the same address as the other two corporate defendants. These alleged facts do not suggest that Societe Financial Group is doing business as Alaska ATM.

But, plaintiff also alleges that the Societe defendants could be liable for breach of contract under a piercing the corporate veil theory. "Alaska law provides that although corporate veils should be pierced only in exceptional circumstances, it is appropriate to do so if the corporate form is used to defeat public convenience, justify wrong, commit fraud, or defend crime." Pister v. State, Dep't of Revenue, 354 P.3d 357, 364 (Alaska 2015) (citation omitted).

The Societe defendants argue that such a claim against them fails because plaintiff has alleged no facts that suggest that the corporate form has been abused by either Dainis or Commercial ATM. They also argue that the alter ego theory only attaches liability to an individual owner, officer or director of an entity by disregarding the corporate form of the

entity. They insist that a piercing the corporate veil theory cannot be used to attach liability to a corporate entity.

Piercing the corporate veil is not an independent claim but rather a theory of liability. See Local 159, 342, 343 & 444 v. Nor Cal Plumbing, Inc., 185 F.3d 978, 985 (9th Cir.1999) ("A request to pierce the corporate veil is only a means of imposing liability for an underlying cause of action and is not a cause of action in and of itself"). Thus, plaintiff need not plead factual support for its piercing the corporate veil theory but need only put defendants on notice that it intends to assert such a theory. See L.D.G., Inc. v. Brown, 211 P.3d 1110, 1124-25 (Alaska 2009) (allowing Brown to argue a piercing the corporate veil theory at trial even though he had not alleged a piercing the veil count in his complaint because L.D.G. had sufficient notice that Brown intended to make such an argument). As for the Societe defendants' contention that liability cannot attach under a piercing the corporate veil theory because they are corporations, this contention is simply wrong. A parent company may be held liable for the actions of subsidiaries under a piercing the corporate veil theory. Volkswagenwerk, A. G. v. Klippan, GmbH, 611 P.2d 498, 505 (Alaska 1980). Moreover, Societe Financial Group is alleged to be the owner of Commercial ATM; so it could be liable as an owner. The Societe defendants are not entitled to dismissal of plaintiff's breach of contract claim against them.

Plaintiff also alleges that Dainis is the alter ego for the three corporate entities and thus is liable for breach of contract under a piercing the corporate veil theory. "Shareholders of a corporation may be liable for corporate debts if the shareholders control the corporation and abuse the corporate structure to prejudice an opposing party." <u>Gold Dust Mines, Inc. v. Little Squaw Gold Min. Co.</u>, 299 P.3d 148, 168 (Alaska 2012). Factors the court considers to determine whether a shareholder should be held personally liable are:

> (a) the shareholder sought to be charged owns all or most of the stock of the corporation; (b) the shareholder has subscribed to all of the capital stock of the corporation or otherwise caused its incorporation; (c) the corporation has grossly inadequate capital; (d) the shareholder uses the property of the corporation as his own; (e) the directors or executives of the corporation act independently in the interest of the corporation or simply take their orders from the shareholder in the latter's interest; and (f) the formal legal requirements of the corporation are observed.

<u>Id.</u> "It is not necessary for all six factors to be satisfied before imposing personal liability. '[T]he primary consideration in determining whether to pierce the corporate veil is whether the corporate form has been abused by the person sought to be charged.'" <u>Id.</u> at 169 (quoting <u>Murat v. F/V Shelikof Strait</u>, 793 P.2d 69, 76 (Alaska 1990)).

Dainis argues that plaintiff's breach of contract claim against him is not plausible because plaintiff has not alleged any facts to support its legal conclusion that Dainis is the alter ego of the three corporate entities. Specifically, Dainis argues that plaintiff has not alleged any facts to suggest that the corporate form was abused by him.

As discussed above, plaintiff was not required to plead factual support for this theory of liability. But even if plaintiff were, plaintiff has pled adequate factual support to make its piercing the corporate veil theory plausible. Plaintiff has alleged that the three corporations share ownership, that they all have the same business address, and that Dainis is the registered agent for at least two of the corporations. These alleged facts are sufficient to suggest that Dainis was the alter ego of one or more of the corporate defendants. Thus, Dainis is not entitled to dismissal of plaintiff's breach of contract claim against him.

Next, Commercial ATM argues that plaintiff's tort claims in Counts II-IV are not plausible because plaintiff cannot recover pure economic losses under a tort theory of liability. "Promises set forth in a contract must be enforced by an action on that contract. Only where the duty breached is one imposed by law, such as a traditional tort law duty furthering social policy, may an action between contracting parties sound in tort." Alaska Pacific Assur. Co. v. Collins, 794 P.2d 936, 946 (Alaska 1990) (internal citation omitted). Commercial ATM contends that this closely resembles the economic loss doctrine, which, "in the abstract, can be viewed as essentially the failure of the purchaser to receive the benefit of its bargain --traditionally the core concern of contract law[.]" Pratt & Whitney Canada, Inc. v. Sheehan, 852 P.2d 1173, 1179 (Alaska 1993) (citation omitted). Because plaintiff had a contract with Commercial ATM and plaintiff has alleged only economic losses, Commercial ATM argues that plaintiff's only claim against it is one for breach of

contract. And, although the Societe defendants dispute that they are parties to the ATM

Agreement, if they are, they argue that plaintiff's claims in Counts II-IV would fail because

of the economic loss doctrine.

Plaintiff's tort claims are not barred by the economic loss doctrine. "Alaska law

imposes an independent duty to refrain from the tort of intentional misrepresentation."

Jarvis v. Ensminger, 134 P.3d 353, 363 (Alaska 2006). Similarly, there would be an

independent duty to refrain from converting another party's money.

Defendants' argument that "social policies" that support a tort claim between

contracting parties only apply when there is unequal bargaining positions between the

parties is unavailing. Defendants cite to Alaska Pacific Assurance Company, 794 P.2d 936,

in support of this argument. Although Alaska Pacific did discuss whether tort claims could

be asserted against a party to a contract, its statement about unequal bargaining power was

not part of that discussion. Rather, that statement was made in connection with the court's

discussion of the implied covenant of good faith and fair dealing. Id. at 947.

Next, the three individual defendants argue that plaintiff's claims in Counts II-VIII

against them must be dismissed because plaintiff has not stated any facts to support a legal

theory of liability against an owner or employees of a company that has a contracting

relationship with plaintiff. The three individual defendants contend that this is nothing

more than a contract dispute and thus plaintiff's claims are limited to the entity with which

it contracted, which in defendants' view is Commercial ATM. The Societe defendants similarly argue that plaintiff's claims in Counts II-VIII against them must be dismissed because plaintiff has alleged no facts to support its contention that they would be liable for any of these claims since they were not parties to the contract.

This argument fails. It is possible that if any of the individual defendants took the residual vault cash that they did so while acting outside the scope of their employment, which would make them personally liable. And as discussed above, it is plausible that the Societe defendants are contracting parties.

Next, the individual defendants and the Societe defendants move to dismiss plaintiff's Count II conversion claim. "The tort of conversion is an intentional exercise of dominion and control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." K & K Recycling, Inc. v. Alaska Gold Co., 80 P.3d 702, 717 (Alaska 2003) (citation omitted). The individual defendants argue that plaintiff has not stated a plausible conversion claim against them because the ATM Agreement allocated the risk of loss of any of plaintiff's cash to Alaska ATM, the business entity with which plaintiff had a contract. Paragraph 3 of the ATM Agreement provides that Alaska ATM "accepts all responsibility and bears all risk of loss for the transfer and handling of Vault Cash, including without limitation, any loss suffered or created by theft, damage, destruction, fraud, or mysterious

loss of cash."[18]  The individual defendants argue that plaintiff is attempting to circumvent this provision by seeking tort remedies against employees and officers of the contracting entity.  The Societe defendants argue that plaintiff's conversion claim against them must be dismissed because plaintiff has not alleged that they ever had access to the residual vault cash.

While the ATM Agreement did make Alaska ATM responsible for any loss of vault cash, that does not mean that the individual defendants could not be liable for conversion if they were not acting within the scope of their employment when they took the cash.  As for the Societe defendants, again, as discussed above, if they were operating as Alaska ATM, then it is plausible that they had access to the cash and could be liable for conversion. Plaintiff's conversion claim is not subject to dismissal.  Plaintiff's conspiracy to commit conversion claim in Count IV also survives the motions to dismiss.

Defendants next move to dismiss plaintiff's fraudulent misrepresentation claim. "[T]he elements of fraudulent misrepresentation are: (1) a misrepresentation of fact or intention, (2) made fraudulently (that is, with "scienter"), (3) for the purpose or with the expectation of inducing another to act in reliance, (4) with justifiable reliance by the recipient, (5) causing loss."  <u>Lightle v. State, Real Estate Com'n</u>, 146 P.3d 980, 983 (Alaska 2006).  Plaintiff alleges that Dainis, "acting for himself personally and as an agent" for

_____

[18]Automated Teller Machine (ATM) Service Agreement at 1, ¶ 3, Exhibit A, Amended Complaint, Docket No. 18.

Commercial ATM, Societe Financial, and Societe Financial Group, made the following misrepresentations:

a.  By signing the Agreement with Cash Depot on or about June 9, 2014, Dainis falsely represented that Alaska ATM and its agents intended to perform the Agreement with Cash Depot. ...Alaska ATM and its agents did not intend to meet Alaska ATM's obligation under the Agreement, but instead intended to take money belonging to Cash Depot....

b.  ...During [the] time period [of April through June 2014], Alaska ATM and its agents regularly and falsely affirmed its intention to withdraw money from the Cash Depot bank account at the Anchorage Wells Fargo for the purpose of completing Alaska ATM's obligations under the Agreement. Instead Alaska ATM intended to take vault cash belonging to Cash Depot.

c.  On or about December 3, 2014, Dainis confirmed that Alaska ATM owed Cash Depot "remaining residuals" of "less than 200K" and falsely stated that Alaska ATM would "make those residual deposits beginning tomorrow."

d.  On or about December 4, 2014, Alaska ATM falsely stated "we're making the deposits as we said would do and no one has stolen any money."

e.  On or about December 12, 2014, Alaska ATM falsely stated "we'll have the remaining residuals deposits made on Monday."

f.  On or about January 21, 2015, Dainis falsely stated that "we'll be making another deposit over the next few days into the Wells Fargo account."[19]

---

[19]Amended Complaint at 6-8, ¶ 29, Docket No. 18.

Plaintiff alleges that it "justifiably relied on the misrepresentations of James Dainis, Reynold Krueger, Dominic Krueger, and the Alaska ATM entities by authorizing James Dainis, Reynold Krueger, and Dominic Krueger to access Cash Depot's money."[20]

Plaintiff has failed to plead this claim with particularity. With one exception, plaintiff has not alleged who made any of the alleged misrepresentations. It is not sufficient to allege that statements were made by Alaska ATM. Plaintiff must allege what individual made the alleged misrepresentations. Plaintiff has also not alleged to whom these statements were made nor has plaintiff alleged why some of these statements were false. Plaintiff's fraudulent misrepresentation claim is dismissed as is plaintiff's conspiracy to commit fraud claim in Count IV.

Defendants next move to dismiss plaintiff's unjust enrichment claim in Count V. "Unjust enrichment is an equitable doctrine which ordinarily falls within the trial court's broad discretion." State, Dep't. of Revenue, Child Support Enforcement Div. v. Wetherelt, 931 P.2d 383, 390 n.11 (Alaska 1997). "'[U]njust enrichment is not in and of itself a theory of recovery. Rather, it is a prerequisite for the enforcement of restitution; that is, if there is no unjust enrichment, there is no basis for restitution.'" Darling v. Standard Alaska Production Co., 818 P.2d 677, 680 (Alaska 1991) (quoting Alaska Sales and Serv., Inc. v. Millet, 735 P.2d 743, 746 (Alaska 1987)). The elements of an unjust enrichment claim are:

_____

[20]Id. at 8, ¶ 31.

-15-

> 1) a benefit conferred upon the defendant by the plaintiff;
> 2) appreciation by the defendant of such benefit; and
> 3) acceptance and retention by the defendant of such benefit under such circumstances that it would be inequitable for him to retain it without paying the value thereof.

Id. Because it is equitable relief, unjust enrichment "is available only when there is no adequate remedy at law." Peter v. Progressive Corp., Case No. S-11416, 2006 WL 438658, at *7 (Alaska Feb. 26, 2006).

Defendants argue that plaintiff's unjust enrichment claim must be dismissed because plaintiff has failed to allege that it has no adequate remedy at law. Rather, defendants argue that the other claims that plaintiff has asserted suggest that plaintiff does in fact have an adequate remedy at law. Defendants contend that plaintiff cannot be pleading this claim in the alternative because nowhere in plaintiff's amended complaint does plaintiff state that is what it is doing.

"[T]he fact that the complaint in this case does not explicitly designate the [unjust enrichment] and contract [claim] as having been plead in the alternative is not dispositive. Under Rule 8, plaintiff need not use particular words to plead in the alternative as long as it can be reasonably inferred that this is what [he was] doing." Coleman v. Standard Life Ins. Co., 288 F. Supp. 2d 1116, 1119-20 (E.D. Cal. 2003) (citation omitted). It is reasonably clear that plaintiff intended to plead its unjust enrichment claim in the alternative.

The individual defendants and the Societe defendants also argue that plaintiff's unjust enrichment claim against them must be dismissed because plaintiff has not alleged that they appreciated any benefit. They argue that plaintiff has not alleged that they had any access to or any opportunity to come into contact with the vault cash.

However, plaintiff has alleged that the three individuals were the couriers which would mean that they had access to the vault cash. And, plaintiff has alleged that all three corporate entities were synonymous with Alaska ATM and thus any of the three corporate entities could have had access to plaintiff's vault cash. Plaintiff's unjust enrichment claim survives the motions to dismiss.

Defendants next move to dismiss plaintiff's UTPA claim in Count V because plaintiff failed to "cite the statute relied upon in parentheses following the title of the pleading." D. Ak. L.R. 10.1(g). This argument fails because plaintiff has plainly cited AS 45.50.471 in parentheses under the title of its UTPA claim.[21]

The individual and Societe defendants also argue that plaintiff lacks standing to bring an UTPA claim against them because plaintiff does not have an interest that has been adversely affected by them. <u>Neese v. Lithia Chrysler Jeep of Anchorage, Inc.</u>, 210 P.3d 1213, 1219 (Alaska 2009). The individual and Societe defendants argue that they could not have done anything to adversely affect plaintiff's interest in the residual vault cash because

---

[21]Amended Complaint at 9, Docket No. 18.

the ATM Agreement provides that Alaska ATM bears all responsibility for any lost cash.

Plaintiff has alleged an injury (the taking of plaintiff's money in the course of trade or commerce) that is fairly traceable to the individual and Societe defendants. Plaintiff has alleged that all three corporate entities were synonymous with Alaska ATM and thus any of the three corporate entities could have had access to plaintiff's vault cash. As for the three individual defendants, plaintiff has alleged that all three were couriers which gave them access to the vault cash. Plaintiff's UTPA claim survives the motions to dismiss.

In Count VII, plaintiff asserts a claim that Alaska ATM and Dainis are jointly and severally liable under the UTPA. Plaintiff states that it included this count in its amended complaint to put the corporate defendants and Dainis on notice that they could be liable under the UTPA even if it were determined that the Kruegers took the money. Plaintiff contends that liability under the UTPA can extend to officers, directors and owners with authority to control the unfair act or practice if they had actual knowledge, were recklessly indifferent, or knew that it was highly probable that an employee or agent of the corporation would commit an unfair act or practice.[22]

This claim is dismissed because "joint and several liability is a request for relief or a rule of contribution: it is not a cause of action." Fraioli v. Lemcke, 328 F. Supp. 2d 250, 282 (D.R.I. 2004). If plaintiff wants to allege that Dainis and the corporate defendants could

---

[22]Alaska Civil Pattern Jury Instruction No. 10.06.

be liable under the UTPA even if the Kruegers stole the residual vault cash, it should do so as part of its UTPA cause of action.

Finally, plaintiff's claim for punitive damages in Count VIII is dismissed because "[p]unitive damages do not constitute a cause of action." Doe v. Colligan, 753 P.2d 144, 145 (Alaska 1988). If plaintiff wants to put defendants on notice that it is seeking punitive damages, the place to do so is in plaintiff's prayer for relief.

Conclusion

Defendants' motions to dismiss are granted in part and denied in part. Plaintiff's Counts VII and VIII are dismissed as is its Count III fraudulent misrepresentation claim and its conspiracy to commit fraud claim in Count IV. The motions are otherwise denied.

Plaintiff is given leave to amend its fraud claims and it may amend its UTPA claim to add its theory of liability that is currently pled as a separate cause of action in Count VII. Plaintiff may also amend its prayer for relief to add a request for punitive damages. Plaintiff's second amended complaint, should plaintiff elect to file one, shall be filed on or before November 2, 2015.

DATED at Anchorage, Alaska, this 19th day of October, 2015.

/s/ H. Russel Holland
United States District Judge